2007 DEC 18  PM 4: 20

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

December 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>JOHN BELLINI,<br>    a/k/a "Pizza Man,"<br>VAN WADE BEDFORD,<br>    a/k/a "Patch,"<br>    a/k/a "Chad Orien,"<br>    a/k/a "Robert Knowles,"<br>    a/k/a "Glen Ross,"<br>TANIA TCHOBANOVA IVANOVA,<br>    a/k/a "Anna,"<br>ALBERINO MAGI,<br>    a/k/a "Rino,"<br>    a/k/a "Robert Knowles,"<br>    a/k/a "Ron Anderson,"<br>    a/k/a "Glen Ross,"<br>    a/k/a "Robert Ross,"<br>GEORGE CHRYSSANTHOPOULOS,<br>    a/k/a "Joker,"<br>    a/k/a "George the Greek,"<br>    a/k/a "Glen Ross,"<br>KEVIN SPENCER POWER,<br>    a/k/a "Redskin,"<br>    a/k/a "Eric Cole,"<br>    a/k/a "John Stewart,"<br>    a/k/a "Don Ellis,"<br>    a/k/a "Bob Stewart,"<br>JOHN POWER,<br>    a/k/a "Bro," | CR 07- **07  01402**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy<br>to Commit Mail Fraud and Wire<br>Fraud; 18 U.S.C. § 1341: Mail<br>Fraud; 18 U.S.C. § 1343: Wire<br>Fraud; 18 U.S.C. § 2326:<br>Telemarketing Fraud Against<br>the Elderly; 18 U.S.C. § 2:<br>Aiding and Abetting and<br>Causing an Act to be Done] |

EML:eml

JEFFREY MORRIS JACOBSON,
     a/k/a "Hotdog,"
     a/k/a "Richard Bradley,"
     a/k/a "Steven Harris,"
     a/k/a "John Stuart,"
KENNETH GOUCHER,
     a/k/a "K-man,"
RICHARD ALLEN GOODHEART,
JEREMIAH MOSHER,
     a/k/a "Gerry,"
APRIL FRANCES MUIR,
     a/k/a "Carole Saunders,"
ARLENE GRUNDY,
     a/k/a "Holly White,"
LORD KOFI AGYAPONG MENSAH,
ALEXANDER ANDRIOPOULOS,
     a/k/a "Jaguar Man,"
MARK DASH,
RAYME AURUM FREEDMAN,
PAUL IFEJEH,
     a/k/a "Mr. P.,"
VIJAYAKUMAR RAMAKRISHNAN,
     a/k/a "Vijay,"
JOHN FELIX ALEXANDER,
     a/k/a "Africa,"
ADRIEN BASIL STEPHENSON, and
WALTER WUELFRATH,

     Defendants.

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 371, 2326]

A.   INTRODUCTION

    1.   Beginning in or about at least the year 2004, and continuing through in or about December, 2006, defendants JOHN BELLINI, also known as ("a/k/a") "Pizza Man" ("BELLINI"); VAN WADE BEDFORD, a/k/a "Patch," a/k/a "Chad Orien," a/k/a "Robert Knowles," a/k/a "Glen Ross," ("BEDFORD"); TANIA TCHOBANOVA IVANOVA, a/k/a "Anna" ("IVANOVA"); ALBERINO MAGI, a/k/a "Rino," a/k/a "Robert Knowles," a/k/a "Ron Anderson," a/k/a "Glen Ross,"

1  a/k/a "Robert Ross" ("MAGI"); GEORGE CHRYSSANTHOPOULOS, a/k/a

2  "Joker," a/k/a "George the Greek," a/k/a "Glen Ross"

3  ("CHRYSSANTHOPOULOS); KEVIN SPENCER POWER, a/k/a "Redskin," a/k/a

4  "Eric Cole," a/k/a "John Stewart," a/k/a "Don Ellis," a/k/a "Bob

5  Stewart" ("K. POWER"); JOHN POWER, a/k/a "Bro" ("J. POWER");

6  JEFFREY MORRIS JACOBSON, a/k/a "Hotdog,"  a/k/a "Richard

7  Bradley," a/k/a "Steven Harris," a/k/a "John Stuart"

8  ("JACOBSON"); KENNETH GOUCHER, a/k/a "K-man" ("GOUCHER"); RICHARD

9  ALLEN GOODHEART ("GOODHEART"); JEREMIAH MOSHER, a/k/a "Gerry"

10 ("MOSHER"); APRIL FRANCES MUIR, a/k/a "Carole Saunders" ("MUIR");

11 ARLENE GRUNDY, a/k/a "Holly White"(GRUNDY); LORD KOFI AGYAPONG

12 MENSAH ("MENSAH"); ALEXANDER ANDRIOPOULOS, a/k/a "Jaguar Man"

13 ("ANDRIOPOULOS"); MARK DASH ("DASH"); RAYME AURUM FREEDMAN

14 ("FREEDMAN"); PAUL IFEJEH, a/k/a "Mr. P." ("IFEJEH"); VIJAYAKUMAR

15 RAMAKRISHNAN, a/k/a "Vijay" ("VIJAY"); JOHN FELIX ALEXANDER,

16 a/k/a "Africa" ("ALEXANDER"); ADRIEN BASIL STEPHENSON

17 ("STEPHENSON"); and WALTER WUELFRATH ("WUELFRATH"), and others

18 known and unknown to the Grand Jury, participated in and were

19 members of a fraudulent telemarketing organization that operated

20 at various locations in  Montreal, Quebec, Canada, and other

21 locations in Canada and the United States, and that targeted

22 elderly individuals in Canada and in the United States, including

23 individuals in the Central District of California.  Members of

24 the organization contacted victims, the majority of whom were

25 elderly, and falsely informed them that they had won a

26 substantial sum of money in a lottery or sweepstakes in order to

27 induce these victims to send money to the organization

28 purportedly to obtain their winnings.  In truth and in fact, as

1   the members of the telemarketing organization well knew, none of
2   the victims had won any money in a lottery or sweepstakes or
3   would receive any money from the telemarketing organization, and
4   the victims lost all of the money sent by the victims to the
5   telemarketing organization.  The defendants took the victims'
6   money and used it for their own enjoyment.
7   B.   OBJECTS OF THE CONSPIRACY
8        2.   Beginning on a date unknown to the Grand Jury and
9   continuing through in or about December 2006, in Los Angeles and
10  Orange Counties, within the Central District of California, and
11  elsewhere, defendants BELLINI, BEDFORD, IVANOVA, MAGI,
12  CHRYSSANTHOPOULOS, K. POWER, J. POWER, JACOBSON, GOUCHER,
13  GOODHEART, MOSHER, MUIR, GRUNDY, MENSAH, ANDRIOPOULOS, DASH,
14  FREEDMAN, IFEJEH, RAMAKRISHNAN, ALEXANDER, STEPHENSON, and
15  WUELFRATH, together with others known and unknown to the Grand
16  Jury, knowingly combined, conspired, and agreed with each other
17  knowingly and intentionally to commit the following offenses
18  against the United States:
19           a.   To commit mail fraud, in violation of Title 18,
20  United States Code, Section 1341;
21           b.   To commit wire fraud, in violation of Title 18,
22  United States Code, Section 1343; and
23           c.   To commit telemarketing fraud against the elderly,
24  in violation of Title 18, United States Code, Section 2326.
25  C.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
26       ACCOMPLISHED
27       3.   The objects of the conspiracy were to be carried out
28  and accomplished, in substance, as follows:

-4-

1          a.   Defendants BELLINI, BEDFORD, IVANOVA, MAGI,
2   CHRYSSANTHOPOULOS, K. POWER, J. POWER, JACOBSON, GOUCHER,
3   GOODHEART, MOSHER, MUIR, GRUNDY, MENSAH, ANDRIOPOULOS, DASH,
4   FREEDMAN, IFEJEH, RAMAKRISHNAN, ALEXANDER, STEPHENSON, and
5   WUELFRATH, and others, committed telemarketing fraud against
6   mostly elderly victims in Canada and the United States, including
7   victims located in the Central District of California.

8          b.   Defendants BELLINI and IVANOVA would obtain
9   "leads," that is, names and contact information of potential
10  victims in the United States and Canada, from defendant FREEDMAN.
11  Defendants BELLINI and IVANOVA would supply these leads to
12  telemarketers, including defendants BEDFORD, MAGI,
13  CHRYSSANTHOPOULOS, K. POWER, J. POWER, JACOBSON, GOUCHER,
14  GOODHEART, MOSHER, MUIR, GRUNDY, MENSAH, ANDRIOPOULOS, and DASH
15  (collectively, the "defendant telemarketers").  Working from the
16  leads, at the direction of defendant BELLINI, the defendant
17  telemarketers would contact victims and falsely inform them that
18  they had won a large sum of money in a sweepstakes or lottery.
19  As the defendants well knew, these representations were false and
20  fraudulent, as there was no sweepstakes or lottery, and the
21  victim called had not won any sum of money.  Frequently, the
22  defendant telemarketers would identify themselves as attorneys;
23  as law enforcement personnel; or as Canadian, American, or
24  lottery-affiliated officials with authority to award money to, or
25  act as the intermediary for, the victim.  As the defendants well
26  knew, these representations were also false and fraudulent, as
27  none of the defendant telemarketers was a government or law
28  enforcement official, was affiliated with a lottery or

-5-

1  sweepstakes, was an attorney, or had any authority to act for the
2  victim.

3         c.    When contacting victims, the defendant
4  telemarketers often used cellular telephones and SIM cards (also
5  called "phone chips") registered in false names, many of which
6  were supplied by defendant BELLINI.

7         d.    The defendant telemarketers would falsely tell the
8  victims that, in order to collect their "winnings," the victims
9  had to pay a sum of money, which the defendant telemarketers
10 falsely represented was for taxes, administrative fees,
11 insurance, legal fees, and other expenses that purportedly had to
12 be paid before the "winnings" could be sent to the victims.  As
13 the defendants well knew, these representations were false and
14 fraudulent, as the victims had no reason to send money to the
15 telemarketing organization.

16        e.    The defendant telemarketers often falsely informed
17 the victims that the victims were not permitted to disclose their
18 winnings to anyone, or they would forfeit those winnings. These
19 representations were false and fraudulent, as the victims had no
20 winnings to forfeit, and the secrecy requirement was a tactic
21 used by the defendant telemarketers to prevent the victims from
22 contacting anyone who might recognize that the promise of
23 winnings was false and convince the victims not to send money.

24        f.    The defendant telemarketers often worked in groups
25 of two or more, playing different roles in an effort better to
26 convince the victims to send money.  For example, when pitching a
27 particular victim, one of the defendant telemarketers might claim
28 to be from a particular lottery organization, and another of the

1  defendant telemarketers would then claim to be the first
2  telemarketer's supervisor.

3           g.   If a victim sent money, the defendant
4  telemarketers often recontacted that victim in order to convince
5  the victim to send more money.  For example, one of the defendant
6  telemarketers would claim to be an attorney notifying the victim
7  of supposed winnings.  Once the victim sent money, another of the
8  defendant telemarketers would speak to the same victim and claim
9  to be a courier who was about to deliver the winnings to the
10 victim, but needed an additional fee in order to do so.  In
11 another example, one of the defendant telemarketers would falsely
12 inform a victim that the victim had won money, but first had to
13 send money to pay for taxes.  Once the victim sent money, another
14 of the defendant telemarketers would call the same victim and
15 falsely inform that victim that the victim's winnings were even
16 larger, but would require a greater fee, and thus the victim had
17 to send additional money.

18          h.   The defendant telemarketers used false names when
19 speaking to victims.

20          i.   The defendant telemakreters, acting at the
21 direction of BELLINI and IVANOVA, would instruct the victims to
22 send the money for the purported expenses and fees mandated for
23 release of their winnings in a variety of ways:

24               (i) By wire transfer via Western Union or
25 MoneyGram, either in a name of the victim's choosing, or in a
26 name supplied by the defendant telemarketers;

27

28

1      (ii) by mail or by commercial carrier, such as
2   Federal Express, to an address supplied by the defendant
3   telemarketers; or

4      (iii) by wire transfer from the victim's bank
5   account into a bank account supplied by the defendant
6   telemarketers.

7      j.   When victims sent money to the telemarketing
8   organization, defendants BELLINI and IVANOVA arranged for that
9   money to be converted to cash for the benefit of the defendants,
10  in the following ways, among others:

11     (i)   Defendants IFEJEH, STEPHENSON and WUELFRATH
12  operated MoneyGram counters.  Defendants RAMAKRISHNAN and
13  ALEXANDER operated Western Union counters.  Western Union and
14  MoneyGram are services that allow a person to transfer money to
15  another person virtually anywhere in the world.  The sender puts
16  money into the system and provides for the money to be picked up
17  by the recipient.  The recipient must provide photographic
18  identification and other information in order to obtain the
19  money.

20     (ii)  When a victim sent money for the purported
21  expenses and fees through Western Union or MoneyGram to a
22  recipient chosen by the victim, the defendant telemarketer who
23  caused the transfer would inform defendants BELLINI and IVANOVA
24  of the information regarding the transfer.  Defendants BELLINI
25  and IVANOVA would then contact defendants IFEJEH, STEPHENSON, or
26  WUELFRATH for MoneyGram transfers, and defendants RAMAKRISHNAN or
27  ALEXANDER for Western Union transfers.  Defendants IFEJEH,
28  RAMAKRISHNAN, ALEXANDER, STEPHENSON, and WUELFRATH would then

1    retrieve the funds from the MoneyGram or Western Union system in
2    the form of cash, in contravention of the rules and policies of
3    MoneyGram and Western Union; would take a percentage of the funds
4    as a fee; and would provide the remaining funds to BELLINI and
5    IVANOVA.

6              (iii)  Defendants BELLINI and IVANOVA employed
7    individuals who acted as "runners" and whose job was to pick up
8    money sent by victims and deliver it to BELLINI and IVANOVA.
9    BELLINI and IVANOVA would supply the names of the runners to the
10   defendant telemarketers, who would instruct victims to wire money
11   through MoneyGram or Western Union in the name of the runner.
12   The runner would then obtain the money from the MoneyGram or
13   Western Union counters of defendants IFEJEH, RAMAKRISHNAN,
14   ALEXANDER, STEPHENSON, and WUELFRATH, who often acted in
15   contravention of numerous rules and policies of MoneyGram and
16   Western Union in connection with these transactions, would take a
17   percentage of the money as a fee, and would supply this money to
18   BELLINI and IVANOVA.

19             (iv) Defendants BELLINI and IVANOVA provided the
20   defendant telemarketers with various addresses in the area of
21   Montreal.  These addresses belonged either to persons who were
22   paid for the use of their addresses, or to members of the
23   telemarketing organization.  The defendant telemarketers provided
24   these addresses to the victims who sent their money via mail or
25   commercial carrier.  Runners would then provide the money sent to
26   BELLINI and IVANOVA.

27             (v)  Defendants BELLINI and IVANOVA provided the
28   defendant telemarketers with information regarding bank accounts

1   that belonged to persons who were paid by BELLINI for the use of
2   these accounts.  The defendant telemarketers provided the
3   information about these bank accounts to the victims, who then
4   sent their money via wire transfer from the victim's bank account
5   to the bank account of the person paid by BELLINI and IVANOVA.
6   BELLINI and IVANOVA would then obtain the money from the person
7   into whose account the money had been transferred.

8          k.   Defendant BELLINI served as the organizer and
9   leader of the telemarketing organization, responsible for, among
10   other things, obtaining the equipment and facilities necessary
11   for the organization's operation; obtaining and providing leads;
12   obtaining and providing cellular telephones and telephone chips
13   for the defendant telemarketers to use in contacting victims;
14   arranging for the training of new members of the organization;
15   bringing teams of defendant telemarketers together to pitch
16   victims; providing for the collection of money sent by the
17   victims; and converting the checks obtained as a result of the
18   organization's fraudulent activities into Canadian dollars and
19   distributing those funds to himself and other members of the
20   organization.

21          l.   Defendant IVANOVA served as defendant BELLINI's
22   assistant, responsible for, among other things, coordinating
23   telemarketers, runners, and Western Union and MoneyGram receipts;
24   getting leads to telemarketers; calculating commissions for
25   telemarketers, runners, and MonyGram and Western Union personnel;
26   and obtaining and distributing cellular telephones and telephone
27   chips.

28

1      m.   Defendant FREEDMAN served as a lead supplier,
2  responsible for providing the telemarketing organization with
3  contact information regarding victims.

4      n.   Defendants BEDFORD, MAGI, CHRYSSANTHOPOULOS, K.
5  POWER, J. POWER, JACOBSON, GOUCHER, GOODHEART, MOSHER, MUIR,
6  GRUNDY, MENSAH, ANDRIOPOULOS, and DASH acted as telemarketers,
7  responsible for contacting victims and recontacting victims, and
8  convincing them, through fraud and deceit, to send money to the
9  organization.

10      o.   Defendants IFEJEH, RAMAKRISHNAN, ALEXANDER,
11 STEPHENSON, and WUELFRATH acted as MoneyGram and Western Union
12 contacts, responsible for informing BELLINI and others in the
13 organization when victim money became available through their
14 systems, taking the money out of the system in the form of cash,
15 and providing the money to defendant BELLINI.

16      p.   Through the above-described conduct, defendants
17 BELLINI, BEDFORD, IVANOVA, MAGI, CHRYSSANTHOPOULOS, K. POWER, J.
18 POWER, JACOBSON, GOUCHER, GOODHEART, MOSHER, MUIR, GRUNDY,
19 MENSAH, ANDRIOPOULOS, DASH, FREEDMAN, IFEJEH, RAMAKRISHNAN,
20 ALEXANDER, STEPHENSON, and WUELFRATH caused hundreds of mostly
21 elderly victims in Canada and the United States to lose over $1
22 million.

23 C.  OVERT ACTS
24      4.   In furtherance of the conspiracy and to accomplish the
25 objects of the conspiracy, the above-named defendants, and others
26 known and unknown to the Grand Jury, committed, and willfully
27 caused others to commit, the following overt acts, among others,
28

1  on or about the following dates, within the Central District of
2  California and elsewhere:

3          OVERT ACT 1.   On July 30, 2004, victim B.P., in the
4  Central District of California, wire transferred money via
5  MoneyGram, which was received by defendant IFEJEH.

6          OVERT ACT 2.   On August 3, 2005, a telemarketer, using
7  the name "Jack Gordon," telephoned victim B.B., in the Central
8  District of California.

9          OVERT ACT 3.   On August 30, 2005, a telemarketer,
10 purporting to be United States Customs representative "Doris,"
11 telephoned victim R.B., in the Central District of California.

12         OVERT ACT 4.   On September 21, 2005, at the direction
13 of a telemarketer using the name "Jack Gordon," who purported to
14 be with a company called "LKR Enterprises," victim G.J. sent via
15 UPS a check to the home of defendant DASH.

16         OVERT ACT 5.   On December 12, 2005, victim D.F., in
17 the Central District of California, wire transferred money via
18 Western Union, which was received by defendant ALEXANDER.

19         OVERT ACT 6.   On May 2, 2006, victim N.L., in the
20 Central District of California, wire transferred money via
21 MoneyGram, which was received by defendant IFEJEH.

22         OVERT ACT 7.   On August 6, 2006, a telemarketer
23 purporting to be Homeland Security representative "Ethan
24 Sherman," telephoned victim M.R., in the Central District of
25 California.

26         OVERT ACT 8.   On August 7, 2006, victim M.R., in the
27 Central District of California, wire transferred money to the
28 bank account of a runner working for defendant BELLINI.

-12-

1   OVERT ACT 9.   On August 10, 2006, victim M.P., in the

2  Central District of California, wire transferred money via

3  MoneyGram, which was received by defendant RAMAKRISHNAN.

4   OVERT ACT 10.   On August 15, 2006, victim M.P., in the

5  Central District of California, wire transferred money via

6  MoneyGram, which was received by defendant RAMAKRISHNAN.

7   OVERT ACT 11.   On August 16, 2006, victim M.P., in the

8  Central District of California, wire transferred money via

9  MoneyGram, which was received by defendant RAMAKRISHNAN.

10   OVERT ACT 12.   On August 16, 2006, defendant DASH

11  collected money sent via Western Union by victim R.M., in the

12  Central District of California.

13   OVERT ACT 13.   On September 11, 2006, defendant DASH

14  attempted to collect money sent via Western Union by victim C.D.

15   OVERT ACT 14.   On October 1, 2006, a defendant

16  telemarketer using the name "James Earl Peach," telephoned victim

17  G.T., in the Central District of California.

18   OVERT ACT 15.   On October 25, 2006, defendant BEDFORD

19  contacted defendant IVANOVA and supplied her with information

20  regarding the collection of money sent via Western Union by

21  victim A.B.

22   OVERT ACT 16.   On October 25, 2006, defendant IVANOVA

23  contacted defendant RAMAKRISHNAN and supplied him with

24  information obtained from defendant BEDFORD regarding the

25  collection of money sent via Western Union by victim A.B.

26   OVERT ACT 17.   On October 27, 2006, defendant BELLINI

27  contacted defendant JACOBSON and provided contact information for

28

-13-

1   a victim with telephone number XXX-XXX-9311, provided by

2   defendant BEDFORD, who had recently sent $2,200.

3        OVERT ACT 18.  On November 8, 2006, defendant JACOBSON,

4   using the name "Richard Bradley," telephoned victim M.M., in the

5   Central District of California.

6        OVERT ACT 19.  On November 8, 2006, defendant K. POWER,

7   using the name "Don Ellis," telephoned victim M.M. in the Central

8   District of California.

9        OVERT ACT 20.  On November 11, 2006, defendant BELLINI

10  and defendant MENSAH had a telephone conversation regarding

11  another telemarketer.

12       OVERT ACT 21.  On November 13, 2006, defendant BELLINI

13  contacted defendant IVANOVA, and handed his telephone to an

14  individual unknown to the Grand Jury, who supplied defendant

15  IVANOVA with information regarding the collection of money sent

16  by victim L.B. via Western Union.

17       OVERT ACT 22.  On November 13, 2006, defendant BEDFORD

18  contacted defendant IVANOVA and supplied her with information

19  regarding the collection of money sent via MoneyGram by a victim

20  with telephone number XXX-XXX-4821.

21       OVERT ACT 23.  On the November 13, 2006, defendant

22  IVANOVA contacted defendant IFEJEH and supplied him with

23  information regarding the collection of money sent via MoneyGram

24  by the victim with telephone number XXX-XXX-4821.

25       OVERT ACT 24.  On November 14, 2006, defendant BELLINI

26  and defendant FREEDMAN had a telephone conversation regarding

27  telemarketing leads.

28       OVERT ACT 25.  On November 14, 2006, defendant MENSAH

-14-

1  contacted defendant BELLINI and supplied him with information
2  regarding money sent by wire transfer.

3  OVERT ACT 26.  On November 14, 2006, victim I.D., in
4  the Central District of California, wire transferred money via
5  Western Union, which was received by defendant ALEXANDER.

6  OVERT ACT 27.  On November 14, 2006, defendant BELLINI
7  had a telephone conversation with defendant MUIR, discussing MUIR
8  working together with defendants CHRYSSOPOULOS, MENSAH, and
9  GOODHEART.

10  OVERT ACT 28.  On November 15, 2006, defendant
11  JACOBSON, using the name "Richard Bradley," and representing
12  himself to be from the company "Secure Core," purportedly a
13  courier company responsible for the delivery of lottery winnings,
14  contacted victim L.B., and advised L.B. that although L.B. had
15  paid insurance and duties on his winnings, he also had to put up
16  a bond in the amount of $2,400 in order to receive his check.

17  OVERT ACT 29.  On November 16, 2006, defendant BELLINI
18  had a telephone conversation with defendant MUIR regarding
19  working with defendants MOSHER and GRUNDY.

20  OVERT ACT 30.  In November 2006, a telemarketer using
21  the name "Mr. Ross," contacted victim H.H. and informed her that
22  she had won $1,950,000, but had to send $2,350 to cover the cost
23  of the insurance on her prize.

24  OVERT ACT 31.  On November 16, 2006, defendant
25  CHRYSSANTHOPOULOS contacted defendant IVANOVA and supplied her
26  with information regarding the pickup of money sent via
27  MoneyGram.

28

-15-

1       OVERT ACT 32.  On November 16, 2006, defendant IVANOVA
2   contacted defendant IFEJEH and supplied him with information
3   regarding the pickup of money sent via MoneyGram.

4       OVERT ACT 33.  On November 16, 2006, defendant  IVANOVA
5   contacted defendant STEPHENSON and supplied him with information
6   regarding the pickup of money sent via MoneyGram.

7       OVERT ACT 34.  On or about November 16, 2006, defendant
8   IVANOVA contacted defendant BELLINI to report that both defendant
9   IFEJEH and defendant STEPHENSON were having difficulty retrieving
10  money sent by victim H.H.

11      OVERT ACT 35.  On November 16, 2006, defendant
12  JACOBSON, using the name "Richard Bradley," and claiming to be
13  from the firm of Cohen and Associates, contacted victim J.H. and
14  informed him that he had a check for J.H. in the amount of
15  $125,000, and that if J.H. was interested, "Bradley" would bring
16  the file to his accountant to complete the process.

17      OVERT ACT 36. On November 16, 2006, defendant K. POWER,
18  representing himself as "John Stewart" of Cohen and Associates,
19  contacted victim J.H. and told him that he had to send money in
20  order to receive his check.

21      OVERT ACT 37.  On November 17, 2006, defendant MOSHER
22  contacted defendant BELLINI regarding money sent by victim D.M.,
23  wife of victim A.F.

24      OVERT ACT 38.  On November 17, 2006, defendant IVANOVA
25  contacted defendant WUELFRATH and discussed the best way to
26  retrieve money sent by a victim with the telephone number XXX-
27  XXX-1648.

28

                            -16-

OVERT ACT 39.  On November 17, 2006, defendant IVANOVA contacted defendant RAMAKRISHNAN and supplied him with information regarding the pickup of money sent by Western Union.

OVERT ACT 40.  On November 17, 2006, defendant IVANOVA contacted defendant STEPHENSON and supplied him with information regarding the collection of money sent via MoneyGram by the victim with the telephone number XXX-XXX-4821.

OVERT ACT 41.  On November 18, 2006, defendant MUIR contacted defendant IVANOVA, and supplied her with information regarding money sent via MoneyGram by a victim with the telephone number XXX-XXX-4647.

OVERT ACT 42.  On November 18, 2006, defendant MOSHER contacted defendant IVANOVA and supplied her with information regarding the pickup of money sent via Western Union by victim A.F.

OVERT ACT 43.  On November 21, 2006, defendant MOSHER contacted defendant IVANOVA and supplied her with information regarding the pickup of money sent via Western Union by victim A.F.

OVERT ACT 44.  On November 21, 2006, defendant J. POWER contacted defendant K. POWER to discuss victim H.E., stating that victim H.E. would not send any more money until he spoke with "Mr. Stewart," and that the balance victim H.E. had to pay in order to receive his prize was $2,800.

OVERT ACT 45.  On November 21, 2006, defendant J. POWER contacted defendant IVANOVA to discuss which runner he should use.

-17-

1    OVERT ACT 46.  On November 22, 2006, defendants BELLINI
2  and BEDFORD contacted defendant IVANOVA to provide information
3  regarding the collection of money sent via MoneyGram by the
4  victim with the telephone number XXX-XXX-4821.

5    OVERT ACT 47.  On November 22, 2006, defendant BELLINI
6  and defendant FREEDMAN had a telephone conversation regarding
7  telemarketing leads.

8    OVERT ACT 48.  On November 23, 2006, defendant
9  GOODHEART contacted BELLINI and supplied him with information
10  regarding the pickup of money sent via MoneyGram by victim M.L.

11    OVERT ACT 49.  On November 23, 2006, defendant IVANOVA
12  contacted defendant STEPHENSON and supplied him with information
13  regarding the pickup of money sent via MoneyGram by a victim.

14    OVERT ACT 50.  On November 24, 2006, defendant GOUCHER
15  contacted defendant GOODHEART and supplied him with information
16  regarding the pickup of money sent via MoneyGram by victim M.L.,
17  requesting that defendant GOODHEART provide the information to
18  defendant IVANOVA.

19    OVERT ACT 51.  On November 24, 2006, defendant IVANOVA
20  contacted defendant IFEJEH and supplied him with information
21  regarding the pickup of money sent via MoneyGram by victim M.L.

22    OVERT ACT 52.  On November 24, 2006, defendant GOUCHER
23  contacted defendant GOODHEART and provided information regarding
24  the pickup of money sent via MoneyGram by a victim.

25    OVERT ACT 53.  On November 25, 2006, defendant IVANOVA
26  contacted defendant WUELFRATH and supplied him with information
27  regarding money sent via MoneyGram by a victim.

28

1    OVERT ACT 54.  On November 27, 2006, defendant MOSHER

2  contacted defendant IVANOVA and supplied her with information

3  regarding the pickup of money sent via Western Union by victim

4  A.F.

5    OVERT ACT 55.  On December 4, 2006, a telemarketer

6  using the name "David Ross," contacted victim N.H., in the

7  Central District of California, and informed her that she had won

8  $225,000, but had to pay $2,800 for the cost of the armored car

9  that would deliver her winnings.

10    OVERT ACT 56.  On December 4, 2006, defendant BEDFORD

11  caused victim N.H., in the Central District of California, to

12  send $2,800 via MoneyGram.

13    OVERT ACT 57.  On December 4, 2006, defendant BEDFORD

14  contacted defendant IVANOVA and supplied her with information

15  regarding the collection of money sent via MoneyGram by a victim.

16    OVERT ACT 58.  On December 4, 2006, defendant IVANOVA

17  contacted defendant IFEJEH and supplied him with information

18  regarding the collection of money sent via MoneyGram by a victim.

19    OVERT ACT 59.  On December 5, 2006, defendant MENSAH

20  and defendant MAGI had a telephone conversation regarding working

21  together.

22    OVERT ACT 60.  On December 6, 2006, defendant

23  CHRYSSANTHOPOULOS contacted defendant BELLINI and laughed about

24  one of his victims, stating that "he has the worst case of

25  Alzheimer's I've ever seen in my life," to which defendant

26  BELLINI responded that defendant CHRYSSANTHOPOULOS was "a funny

27  fuck."

28

-19-

1        OVERT ACT 61.  On December 7, 2006, defendant
2   CHRYSSANTHOPOULOS contacted defendant IVANOVA and supplied her
3   with information regarding the pickup of money sent via MoneyGram
4   by a victim with the telephone number XXX-XXX-3471.

5        OVERT ACT 62.  On December 7, 2006, defendant IVANOVA
6   contacted defendant RAMAKRISHNAN, and supplied him with
7   information regarding the pickup of money sent via MoneyGram by
8   the victim with the telephone number XXX-XXX-3471.

9        OVERT ACT 63.  On December 12, 2006, defendant BELLINI
10  contacted defendant ANDRIOPOULOS and discussed contacting
11  Canadian victims.

12       OVERT ACT 64.  On December 14, 2006, defendants BELLINI
13  and ANDRIOPOULOS contacted an uncharged telemarketer and
14  discussed training.

15       OVERT ACT 65.  On December 14, 2006, defendant MAGI,
16  using the name "Robert Knowles," contacted victim Mr. B., and
17  discussed why the victim had to send money in order to receive
18  his prize.

19       OVERT ACT 66.  On December 16, 2006, defendant MAGI
20  contacted defendant BEDFORD, provided him with the name and
21  contact information for victim C.R. (telephone number XXX-XXX-
22  3471), and informed defendant BEDFORD that victim C.R. had
23  already sent $2,500 twice to cover the taxes on the prize; that
24  the names used to contact victim C.R. were "Glen Ross" and
25  "Robert Knowles"; and that defendant BEDFORD was to act as the
26  supervisor.

27

28

1          OVERT ACT 67.  On December 18, 2006, defendant BELLINI
2   contacted defendant MAGI and discussed whether MAGI would work
3   with defendants MUIR and GRUNDY.
4          OVERT ACT 68.  On December 19, 2006, defendants IVANOVA
5   and MUIR possessed contact information and information regarding
6   money sent by the victim with the telephone number XXX-XXX-9311.
7          OVERT ACT 69.  On December 19, 2006, defendant
8   CHRYSSANTHOPOULOS possessed a telephone chip containing the
9   telephone number XXX-XXX-9311.
10         OVERT ACT 70.  On December 19, 2006, defendant
11  CHRYSSANTHOPOULOS possessed a cellular telephone containing a
12  record of calling the telephone number of victim C.R.
13         OVERT ACT 71.  On December 19, 2006, defendants
14  JACOBSON and MUIR possessed contact information for victim L.B.
15         OVERT ACT 72.  On December 19, 2006, defendant MUIR
16  possessed telemarketing leads.
17         OVERT ACT 73.  On December 19, 2006, defendant MUIR
18  possessed contact information for victim C.R. with the note "I
19  called as Tom Ballan Driver," and another note with the same
20  information as well as the pitch name "Glen Ross."
21         OVERT ACT 74.  On December 19, 2006, defendant GRUNDY
22  possessed a telemarketing lead in the name of victim J.W.
23         OVERT ACT 75.  On December 19, 2006, defendant MENSAH
24  possessed telemarketing leads.
25         OVERT ACT 76.  On December 19, 2006, defendant FREEDMAN
26  possessed approximately 1,300 telemarketing leads.
27
28

OVERT ACT 77.  On December 19, 2006, defendant FREEDMAN possessed a telemarketing lead with the information of the victim with telephone number XXX-XXX-4821.

OVERT ACT 78.  On December 19, 2006, defendant IFEJEH possessed a MoneyGram transaction slip and payout record associated with victim N.H.

OVERT ACT 79.  On December 19, 2006, defendant ALEXANDER possessed a Western Union transaction slip in the name of victim A.F.

OVERT ACT 80.  On December 19, 2006, defendants STEPHENSON and WUELFRATH possessed a Moneygram receipt and a transaction slip in the name of the victim with the telephone number XXX-XXX-4821.

//

//

//

//

//

//

//

//

COUNTS TWO AND THREE

[18 U.S.C. §§ 1341, 2326, 2]

C.   INTRODUCTION

5.   The Grand Jury hereby realleges and incorporates by reference paragraphs one and three of this Indictment.

D.   THE SCHEME TO DEFRAUD

6.   Beginning in or before 2004, and continuing until in or about December 2006, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants BELLINI, BEDFORD, IVANOVA, MAGI, CHRYSSANTHOPOULOS, K. POWER, J. POWER, JACOBSON, GOUCHER, GOODHEART, MOSHER, MUIR, GRUNDY, MENSAH, ANDRIOPOULOS, DASH, FREEDMAN, IFEJEH, RAMAKRISHNAN, ALEXANDER, STEPHENSON, and WUELFRATH, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, in connection with and through the conduct of telemarketing, and victimizing ten or more persons over the age of 55 and targeting persons over the age of 55.

7.   The scheme to defraud was executed by defendants BELLINI, BEDFORD, IVANOVA, MAGI, CHRYSSANTHOPOULOS, K. POWER, J. POWER, JACOBSON, GOUCHER, GOODHEART, MOSHER, MUIR, GRUNDY, MENSAH, ANDRIOPOULOS, DASH, FREEDMAN, IFEJEH, RAMAKRISHNAN, ALEXANDER, STEPHENSON, and WUELFRATH as set forth in paragraph three of this Indictment.

-23-

1 E.   USE OF THE MAILS

2      8.   On or about the dates set forth below, in Orange County,

3 within the Central District of California, and elsewhere,

4 defendants BELLINI, BEDFORD, IVANOVA, MAGI, CHRYSSANTHOPOULOS, K.

5 POWER, J.  POWER, JACOBSON, GOUCHER, GOODHEART, MOSHER, MUIR,

6 GRUNDY, MENSAH, ANDRIOPOULOS, DASH, FREEDMAN, IFEJEH,

7 RAMAKRISHNAN, ALEXANDER, STEPHENSON, and WUELFRATH, for the

8 purpose of executing the above-described scheme to defraud, in

9 connection with and through the conduct of telemarketing, and

10 victimizing ten or more persons over the age of 55 and targeting

11 persons over the age of 55, willfully caused the following items

12 to be placed in an authorized depository for mail matter and to

13 be sent and delivered by the U.S. Postal Service and to be

14 deposited with and to be delivered by a private and commercial

15 carrier operating in interstate commerce, according to the

16 directions thereon:

17 | COUNT | DATE | ITEM MAILED |
| --- | --- | --- |
| TWO | 07/27/05 | Federal Express package containing a cashier's check in the amount of $6,400, sent by victim B.B., in Placentia, California, USA, to LKR Enterprises, in Montreal, Quebec, Canada |
| THREE | 08/03/05 | Federal Express package containing a cashier's check in the amount of $24,000, sent by victim B.B., in Placentia, California, USA, to Lewis Kramer Enterprises, in Montreal, Quebec, Canada |

24 //

26 //

-24-

COUNTS FOUR THROUGH TWENTY-FIVE

[18 U.S.C. §§ 1343, 2326, 2]

9.   The Grand Jury hereby realleges and incorporates by reference paragraphs one, three, six, and seven of this Indictment.

F.   <u>USE OF THE WIRES</u>

10.   On or about the dates set forth below, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants BELLINI, BEDFORD, IVANOVA, MAGI, CHRYSSANTHOPOULOS, K. POWER, J. POWER, JACOBSON, GOUCHER, GOODHEART, MOSHER, MUIR, GRUNDY, MENSAH, ANDRIOPOULOS, DASH, FREEDMAN, IFEJEH, RAMAKRISHNAN, ALEXANDER, STEPHENSON, and WUELFRATH, for the purpose of executing the above-described scheme to defraud, in connection with and through the conduct of telemarketing, and victimizing ten or more persons over the age of 55 and targeting persons over the age of 55, willfully caused and aided and abetted the transmission of the following by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| FOUR | 07/30/04 | $4,500 wire transferred by MoneyGram from victim B.P., in Beaumont, California, USA, received by defendant IFEJEH, in Montreal, Quebec, Canada |
| FIVE | 08/03/05 | Telephone call from a telemarketer using the name "Jack Gordon," from Montreal, Quebec, Canada, to victim B.B. in Placentia, California, USA |

-25-

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| SIX | 08/30/05 | Telephone call from a defendant telemarketer using the name "Doris," from Montreal, Quebec, Canada, to victim R.B. in Placentia, California, USA |
| SEVEN | 12/12/05 | $3,500 wire transferred by Western Union from victim D.F. in La Crescenta, California, USA, received by defendant ALEXANDER, in Montreal, Quebec, Canada |
| EIGHT | 05/02/06 | $2,300 wire transferred by MoneyGram from victim N.L. in Long Beach, California, USA, received by defendant IFEJEH in Montreal, Quebec, Canada |
| NINE | 08/06/06 | Telephone call from a telemarketer using the name "Ethan Sherman," from Montreal, Quebec, Canada, to victim M.R. in Laguna Niguel, California, USA |
| TEN | 08/07/06 | $12,310 wired from the bank account of victim M.R. in Laguna Niguel, California, USA, to a bank account in the name of a runner for defendant BELLINI, in Montreal, Quebec, Canada |
| ELEVEN | 08/10/06 | $2,500 wire transferred by MoneyGram from victim M.P. in Los Angeles, California, received by defendant RAMAKRISHNAN in Montreal, Quebec, Canada |
| TWELVE | 08/15/06 | $2,523 wire transferred by MoneyGram from victim M.P. in Los Angeles, California, USA, received by defendant RAMAKRISHNAN in Montreal, Quebec, Canada |
| THIRTEEN | 08/16/06 | $2,750 wire transferred by MoneyGram transfer from victim M.P. in Los Angeles, California, USA, received by defendant RAMAKRISHNAN in Montreal, Quebec, Canada |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| FOURTEEN | 10/01/06 | Telephone call from a defendant telemarketer using the name "James Earl Peach," from Montreal, Quebec, Canada, to victim G.T. in Los Angeles, California, USA |
| FIFTEEN | 10/05/06 | $1,850 wire transferred by Western Union from victim G.T. in Los Angeles, California, received by a runner for defendant BELLINI, in Montreal, Quebec, Canada |
| SIXTEEN | 10/07/06 | $1,850 wire transferred by Western Union from victim G.T. in Los Angeles, California, received by a runner for defendant BELLINI, in Montreal, Quebec, Canada |
| SEVENTEEN | 10/05/06 | $2,850 wire transferred by Western Union from victim G.T. in Los Angeles, California, received by a runner for defendant BELLINI, in Montreal, Quebec, Canada |
| EIGHTEEN | 10/12/06 | $52,790.17 wire transferred from the bank account of victim G.T. in Los Angeles, California, USA, to a bank account in the name of a runner for defendant BELLINI, in New York, New York, USA |
| NINETEEN | 10/20/06 | $1,500 wire transferred by MoneyGram from victim G.T. in Los Angeles, California, received by defendant IFEJEH, in Montreal, Quebec, Canada |
| TWENTY | 11/08/06 | Telephone call from defendant JACOBSON using the name "Richard Bradley," from Montreal, Quebec, Canada, to victim M.M. in Van Nuys, California, USA |
| TWENTY-ONE | 11/08/06 | Telephone call from defendant K. POWER, using the name "Don Ellis," from Montreal, Quebec, Canada, to victim M.M. in Van Nuys, California, USA |

| COUNT | DATE | ITEM WIRED |
|-------|------|-----------|
| TWENTY-TWO | 11/14/06 | $500 wire transferred by Western Union from victim I.D. in Santa Ana, California, USA, received by defendant ALEXANDER in Montreal, Quebec, Canada |
| TWENTY-THREE | 12/04/06 | Telephone call from a telemarketer using the name "David Ross," from Montreal, Quebec, Canada, to victim N.H. in Menisee, California, USA |
| TWENTY-FOUR | 12/04/06 | $2,800 wire transferred by MoneyGram from victim N.H. in Menisee, California, USA, received by defendant IFEJEH, in Montreal, Quebec, Canada |
| TWENTY-FIVE | 12/05/06 | Telephone call from victim N.H. in Menisee, California, USA, to "David Ross," in Montreal, Quebec, Canada |

A TRUE BILL,

_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

*Christine C Ewell*

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds Section


RANEE A. KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds Section


ELLYN MARCUS LINDSAY
Assistant United States Attorney
Major Frauds Section